Bray ABARCA and Juan Carlos
Sanchez, Appellants,

v.

SCOTT MORGAN RESIDENTIAL, INC.
and Mauricio Castano, Individually
and d/b/a MCC Construction Services,
Appellees.

No. 01–07–00813–CV.

Court of Appeals of Texas,
Houston (1st Dist.).

Sept. 24, 2009.

Rehearing Overruled Nov. 19, 2009.

David R. Feldman, Korey A. Huff, Ryan K. Brent, Scott S. Vasquez, Trisha A. Keough, Vasquez & Sammons, L.L.P., Leo Carrasco, Law Office of Leo Carrasco, Houston, TX, for Appellants.

Bernardo S. Garza, Callier & Garza, L.L.P., John Kenneth Woodard, Bush & Ramirez, LLC, Houston, TX, for Appellees.

Panel consists of Justices KEYES, HANKS, and BLAND.

## OPINION

EVELYN V. KEYES, Justice.

Appellants, Bray Abarca and Juan Carlos Sanchez, challenge the summary judgment rendered against them in their suit for negligence, negligence per se, and breach of contract against Scott Morgan Residential, Inc. ("S.M.R.") and Mauricio Castano, individually and doing business as MCC Construction Services (collectively, "Castano"), appellees. In five issues, Bray Abarca and Sanchez argue that the trial court erred (1) in granting S.M.R.'s motion for summary judgment based on Chapter 95 of the Texas Civil Practice and Remedies Code[1] because Chapter 95 was not applicable, or, alternatively, because Bray Abarca and Sanchez raised a fact issue regarding S.M.R.'s retention of control, actual knowledge of a dangerous condition, and failure to warn; (2) in granting S.M.R.'s and Castano's motions for summary judgment on the breach of contract claims because Bray Abarca and Sanchez were third-party beneficiaries of the agreement between S.M.R. and Castano; (3) in granting S.M.R.'s and Castano's motions for summary judgment on the common law negligence claims because Bray Abarca and Sanchez raised a fact issue concerning S.M.R.'s and Castano's liability; (4) in granting S.M.R.'s and Castano's motions for summary judgment on the negligence per se claims because Bray Abarca and Sanchez raised a fact issue concerning S.M.R.'s and Castano's liability; and (5) in granting S.M.R.'s no-evidence motion for summary judgment because Bray Abarca and Sanchez raised a fact issue concerning S.M.R.'s negligence and breach of contract.

We affirm in part and reverse and remand in part.

## Background

On April 14, 2006, Bray Abarca and Sanchez were injured when a scaffold they were using collapsed while they were performing construction work on property owned by Feagan Street Casitas, L.P. S.M.R. is a general partner of Feagan Street Casitas and is in the business of constructing both single and multi-family homes for sale. Scott Morgan, president of S.M.R., stated in his affidavit that S.M.R. "made all business decisions (including all decisions relating to construction) for Feagan Street Casitas, L.P., on behalf of and as the general partner of Feagan Street Casitas, L.P. during the time that this construction project was underway." Morgan's affidavit also stated that S.M.R. "served as the general contractor for the construction project and was in possession of the construction site during the time that the project was being built...." S.M.R. employed Walter Fisk, who signed agreements on behalf of S.M.R. but did not spend much time at the construction site, and Ron Harrington, who acted as S.M.R.'s site superintendent.

S.M.R., through Walter Fisk, hired Castano to perform some of the construction work at the Feagan Street Casitas project. S.M.R. and Castano entered into a "Subcontract Agreement" that detailed the work Castano would be responsible for performing and required him "to furnish all labor, material, equipment, services and supervision to complete" the work as described in the addendum to the agreement entitled "Scope of Work." The Subcontract Agreement contained a total of 26 provisions and provided as follows:

2. **MATERIALS AND EQUIPMENT.** Subcontractor [Castano] shall provide all materials as above specified and all tools, accessories, scaffolding and equip-

---

1. *See* TEX. CIV. PRAC. & REM CODE ANN. §§ 95.001–95.004 (Vernon 2005).

ment which may be necessary to properly execute the Work and to coordinate the Work with the work of other subcontractors on the Project, including all items necessary or usual in work of this kind to finish the Work in a good and workmanlike manner .... Subcontractor warrants that all such materials shall be new unless otherwise specified and, if so required by Contractor [S.M.R.], Subcontractor shall furnish satisfactory evidence as to the kind and quality of such materials.

The Subcontract Agreement also included warranties made by the subcontractor, provisions for settlement of disputes, payment details, and various other provisions. Regarding compliance with state and federal laws and regulations, the agreement provided as follows:

Subcontractor [Castano] shall comply with all federal, state and municipal laws, codes, regulations and ordinances effective where the Work is to be performed, including purchasing all permits and licenses and paying all fees necessary for the proper execution and completion of the Work .... Subcontractor shall comply with the Federal Occupation Safety and Health Act of 1970 ["OSHA"], as amended and with any safety rules and regulations established by the Owner [Feagan Street Casitas, in which S.M.R. is a general partner] or Contractor [S.M.R.] for the performance of the Work.

Under a provision entitled "Safety Policy," the agreement provided that the "Subcontractor [Castano] hereby acknowledges that it has read and become familiar with Contractor's [S.M.R.'s] Safety Requirements and Subcontractor agrees to advise each and every one of its employees, agents, subcontractors, and suppliers of Contractor's Safety Requirements." Regarding third-party beneficiaries, the agreement provided, "Owner [Feagan Street Casitas] is a third-party beneficiary of this Subcontract, and Owner shall have the right (but not the obligation) to enforce the provisions of this Subcontract for Owner's benefit. Owner shall have the same rights and remedies against Subcontractor as are available to Contractor." This agreement was signed by Castano and by Walter Fish on behalf of S.M.R.

The "Scope of Work" Addendum to the Subcontract Agreement contained a total of 58 numbered provisions establishing that Castano would provide "all labor, materials, licenses, equipment, temporary power (generators), forklifts, crane[s], tools, incidentals, freight, insurance, drawings, etc. necessary to provide a complete framing job for buildings," and outlining the various materials and labor that would be required for each aspect of the work that Castano was to perform. It also required Castano to provide information to S.M.R., including "[c]urrent OSHA approved safety programs," before starting work, and it stated the following:

The safety of all workmen is the Primary Concern of Morgan Residential, Inc. This Subcontractor [Castano] shall perform all work in strict compliance with all local codes and in accordance with all OSHA statutes and regulations. This includes replacing any existing safety railings that his workers remove. This Subcontractor understands that his failure to comply with any of the requirements set forth above shall result in his bearing the cost of any fines incurred because of such failure. This Subcontractor shall comply with all rules and regulations of OSHA. A hard-hat must be worn at all times when on the job site when applicable to work. Morgan Residential, Inc., requires that each Subcontractor provide a current safety program. Any and all injuries must be reported to Morgan Residential, Inc.,

where the appropriate injury report must be filled out and calls for help, if needed, can be made. The Subcontractor and his employees agree that animals, stereos, alcohol, drugs and persons under the age of 18 years, will not be allowed onto the job site. Subcontractor shall enforce this provision.

Provision number 49 of the "Scope of Work" addendum stated that "Contractor [S.M.R.] or the contractor's job Superintendent [Harrington] shall have the right to approve or reject the type, size, weight and/or time limits of the Subcontractor's machinery and equipment utilized on the project."

Castano then hired Alfredo Abarca, the brother of appellant Bray Abarca, to help with the framing and cornice work on the construction project. Alfredo Abarca signed an agreement with Castano naming Alfredo Abarca as a subcontractor and stating, "Subcontractor agree[s] to perform the work and provide the material described below. All work and material shall comply with all applicable codes and requirements of and be subjects to the approval of all applicable City, County and State agencies." The work to be performed included "framing, windstrong ties, drywall (fire code), wall sheathing, roof decking, cornice, siding, windows, ext. doors, tyvek, all interior details and punch out." This agreement also referenced an attached list of additional terms and conditions, initialed by Alfredo Abarca, including the following statement:

> To the fullest extent permitted by law, Subcontractor [Alfredo Abarca] agrees to save, indemnify and hold harmless MCC Construction Services [Castano] and the Owner of the project [Feagan Street Casitas, in which S.M.R. was a general partner] against any and all liability, claims, judgment or demands, including demands arising from injuries to

or death of persons (including Subcontractor's employees), and damage to property (including Subcontractor's property), and any other loss, damage, or expenses arising directly or indirectly out of the actions, work and activities of subcontractor and the work undertaken by subcontractor, or out of the operation conducted by subcontractor. This indemnity obligation includes the obligation to defend Owner and MCC Construction Services at the Subcontractor's expense.

One of the additional terms included on this list stated that Alfredo Abarca was responsible for furnishing general liability insurance at his own expense.

Alfredo Abarca also signed a document entitled "Subcontractor's Waiver." This waiver designated Alfredo Abarca as an independent contractor and contained another "hold harmless" clause. The waiver also stated, "The independent contractor shall be solely responsible for all supervision and coordination of the work and for all responsible [sic] precautions needed to carry out such work in a manner safe for both the project and all people involved therein." All of these documents were signed by Alfredo Abarca on March 31, 2006.

Bray Abarca and Sanchez, along with several other men, were hired by Alfredo Abarca. Alfredo Abarca's deposition testimony, along with that of Bray Abarca and Sanchez, established that Alfredo Abarca was responsible for paying the workers on his crew, including Bray Abarca and Sanchez, out of the money paid to him by Castano and that Alfredo Abarca and his brother, Bray Abarca, provided the tools that the crew used to do their work. None of the parties contest these facts. Alfredo Abarca's deposition testimony also established that Castano explained the work that needed to be done to Alfredo Abarca

and his crew, who then completed the work on their own without further instruction from Castano or Harrington, S.M.R.'s on-site representative. Bray Abarca and Sanchez both testified in their depositions that they knew what work to do and did not receive instructions or directions from Castano and that if they had questions they would have asked Alfredo Abarca.

Some of the work that Alfredo Abarca contracted with Castano to complete required that he and his crew members use a scaffold. Castano gave deposition testimony that he had observed Alfredo Abarca completing similar work on another site and believed that Alfredo Abarca had a scaffold when he hired him to work on the Feagan Street Casitas. Alfredo Abarca gave deposition testimony that he initially thought Castano was supposed to provide the scaffold and that he talked to Castano about the need for a scaffold every day that he was at the work site. Alfredo Abarca's deposition testimony also indicated that he eventually realized that either he had to get a scaffold to complete the work or he would not be able to complete the job. Alfredo Abarca stated in his deposition that Castano and Harrington, S.M.R.'s representative on the site, gave him an "option" regarding how he would acquire the needed scaffold.

Alfredo Abarca and Sanchez, one of the appellants in this case, worked together to construct two different scaffolds—one longer than the other. Alfredo Abarca's deposition testimony established that Castano and Harrington gave him permission to use some of the materials available on the site to build the scaffolds, that Castano and Harrington were present and "supervising the job" while he and Sanchez built the scaffold, and that Castano, while Harrington was present, gave Alfredo Abarca suggestions and an "orientation" regarding how to build the scaffold.

On April 14, 2006, Alfredo Abarca and Sanchez were working on the longer of the two scaffolds they had built, when, according to Alfredo Abarca, Castano and Harrington asked him to come down from the scaffold and send a different worker up to help Sanchez because they needed to discuss with him some work that needed to be done in another area of the work site. Alfredo Abarca sent his brother, Bray Abarca, the other appellant in this case, up onto the scaffold to help Sanchez. While Bray Abarca and Sanchez were working on the longer scaffold, it broke and they were injured. In his deposition testimony, Alfredo Abarca acknowledged that he had the opportunity to stop work and walk away from the job and that he did not have to send his employees, Bray Abarca and Sanchez, up onto the scaffold. Sanchez testified that he knew the materials used to build the scaffold were not intended to be used as a scaffold and that he knew the scaffold lacked a railing. Bray Abarca also testified during his deposition that he thought the scaffold was dangerous and that he did not want to work on it.

Bray Abarca and Sanchez filed their original petition on June 21, 2006, alleging negligence against S.M.R. and Castano. Bray Abarca and Sanchez eventually filed six amended petitions each. The sixth amended petitions, the live pleadings at the time the trial court issued its final judgment, alleged claims of negligence, negligence per se for violations of certain regulations promulgated under the Occupations Safety and Health Act ("OSHA"), and breach of contract based on the Subcontract Agreement between S.M.R. and Castano.

Castano filed a total of three motions for summary judgment. He argued that he was entitled to summary judgment dismissal of Bray Abarca and Sanchez's negligence claims because they were employees

of an independent contractor seeking to recover for damages that resulted from their own negligent activity, and, therefore, Castano was not liable. Castano also argued that he had no duty to warn Bray Abarca and Sanchez because they were aware of the dangers of the scaffold and ignored the warnings of others and that he did not retain control over the work of the independent contractors such that he owed any other duty to them. Regarding Bray Abarca and Sanchez's breach of contract claim, Castano argued that Bray Abarca and Sanchez were not third-party beneficiaries of the contract between S.M.R. and Castano, and, therefore, they were not entitled to recover under the contract. Castano also argued that summary judgment was appropriate on Bray Abarca and Sanchez's negligence per se claims because negligence per se claims based on OSHA violations are not recognized under Texas law.

Bray Abarca and Sanchez responded to Castano's motion for summary judgment, arguing that Castano failed to prove that the negligent activity theory applied, that a genuine issue of material fact remained with regard to the contractual right of control, and that Castano exercised an actual right to control the details of Bray Abarca and Sanchez's work.

S.M.R. filed a traditional and no-evidence motion for summary judgment. It its motion, S.M.R. argued that it was entitled to summary judgment because it owed no duty to Bray Abarca and Sanchez under Chapter 95 of the Texas Civil Practice and Remedies Code and, in the alternative, that even if Chapter 95 did not preempt the common law, Bray Abarca and Sanchez had failed to show that S.M.R. owed them any duty. Regarding the negligence per se claims, S.M.R. also argued that safety rules and OSHA regulations did not expand the duties owed by S.M.R. under state law and did not support negligence per se claims. S.M.R.'s motion for summary judgment also argued that Bray Abarca and Sanchez could not recover under their breach of contract claims against S.M.R. because they were not third-party beneficiaries of the contract between Castano and S.M.R. The no-evidence portion of S.M.R.'s motion did not present any new arguments.

Bray Abarca and Sanchez responded to S.M.R.'s traditional and no-evidence motion for summary judgment by arguing that Chapter 95 does not apply to this case. Furthermore, Bray Abarca and Sanchez argued that S.M.R. had a contractual right of control and had exercised actual control over their work. They responded that S.M.R. was also liable for negligence under the common law and that S.M.R. was liable for negligence per se for violating OSHA regulations because S.M.R. and Castano had contracted to have OSHA regulations apply. Finally, Bray Abarca and Sanchez argued that summary judgment on their breach of contract claim would be improper because they were third-party beneficiaries under the contract between S.M.R. and Castano.

On March 28, 2007, the trial court issued an order granting Castano's first motion for summary judgment, dismissing Bray Abarca's and Sanchez's negligence cause of action. On August 6, 2007, the trial court signed an order granting Castano's motions for summary judgment on Bray Abarca's and Sanchez's remaining claims for breach of contract and negligence per se and an order granting S.M.R.'s motion for summary judgment on all of Bray Abarca's and Sanchez's claims. On August 30, 2007, the trial court signed the final judgment ordering that Bray Abarca and Sanchez take nothing.

## Standard of Review

We review the trial court's grant of summary judgment de novo. *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex.2003). We must make inferences, resolve doubts, and view the evidence in the light most favorable to the non-movant. *Rhone–Poulenc, Inc. v. Steel*, 997 S.W.2d 217, 223 (Tex.1999). The motions for summary judgment challenged in this appeal contained both traditional and no-evidence grounds for summary judgment. *See* Tex.R. Civ. P. 166a(c), (i).

A traditional summary judgment under Texas Rule of Civil Procedure 166a(c) is properly granted only when the movant establishes that there are no genuine issues of material fact and that he is entitled to judgment as a matter of law. Tex.R. Civ. P. 166a(c); *Knott*, 128 S.W.3d at 215–16. Summary judgment is only proper on claims for which the movant is the defendant when the movant negates at least one element of each of the plaintiff's causes of action or when the movant conclusively establishes each element of an affirmative defense. *Science Spectrum, Inc. v. Martinez*, 941 S.W.2d 910, 911 (Tex.1997). If the movant conclusively negates an element of each of the plaintiff's causes of action or conclusively establishes its own cause of action, the burden shifts to the non-movant to respond with evidence raising a genuine issue of material fact that would preclude summary judgment. *Knott*, 128 S.W.3d at 222–23. In deciding whether there is a disputed material fact precluding summary judgment, evidence favorable to the non-movant will be taken as true, every reasonable inference must be indulged in favor of the non-movant, and any doubts must be resolved in favor of the non-movant. *Id.* at 215.

A no-evidence summary judgment motion asserts that no evidence exists as to at least one essential element of the non-movant's claims on which the non-movant would have the burden of proof at trial. *Bendigo v. City of Houston*, 178 S.W.3d 112, 114 (Tex.App.-Houston [1st Dist.] 2005, no pet.) (citing *Jackson v. Fiesta Mart*, 979 S.W.2d 68, 70–71 (Tex.App.-Austin 1998, no pet.)). On review, we ascertain whether the non-movant produced more than a scintilla of probative evidence to raise a genuine issue of material fact. *Id.*

Here, because the summary judgment order does not specify the grounds on which the trial court relied for its ruling, we will affirm the judgment if any of the theories included in the motions has merit. *Aleman v. Ben E. Keith Co.*, 227 S.W.3d 304, 309 (Tex.App.-Houston [1st Dist.] 2007, no pet.) (citing *Weiner v. Wasson*, 900 S.W.2d 316, 317 n. 2 (Tex.1995)).

## Contract Claims

In their second issue, Bray Abarca and Sanchez argue that the trial court erred in granting S.M.R.'s and Castano's motions for summary judgment on their breach of contract claims because Bray Abarca and Sanchez had presented sufficient evidence to raise a fact issue concerning whether they were third-party beneficiaries of the Subcontract Agreement between S.M.R. and Castano. S.M.R. and Castano both argue that summary judgment was proper because Bray Abarca and Sanchez were not third-party beneficiaries of the Subcontract Agreement between S.M.R. and Castano, and, therefore, they are not entitled to recover any damages for breach of that contract.

In determining whether a third party has a right to enforce a contract, a court must look to the express intent of the contracting parties. *Tabor, Chhabra & Gibbs, P.A. v. Medical Legal Evaluations, Inc.*, 237 S.W.3d 762, 773 (Tex.App.-

Houston [1st Dist.] 2007, no pet.). In determining the contracting parties' intentions, a court must examine the contract in its entirety and consider and construe all of its provisions together. *Esquivel v. Murray Guard, Inc.,* 992 S.W.2d 536, 543 (Tex.App.-Houston [14th Dist.] 1999, pet. denied). When a contract is not ambiguous, the construction of the written agreement is a question of law for the court, and we review the trial court's legal conclusions de novo. *MCI Telecomms. Corp. v. Tex. Utils. Elec. Co.,* 995 S.W.2d 647, 650–51 (Tex.1999). There is a strong presumption against finding that a third party is a beneficiary of a contract. *See id.* at 651. Courts should presume that an agreement confers no third-party-enforcement rights unless it "clearly appears" that the contract intends that the third party benefit, to the point of suing upon the contract. *Tabor, Chhabra & Gibbs,* 237 S.W.3d at 773 (quoting *MCI Telecomms.,* 995 S.W.2d at 651).

 Accordingly, a contract does not confer third-party beneficiary rights unless: (1) the contract plainly expresses the third-party obligation of the bargain-giver, (2) it is unmistakable that a benefit to the third party is within the contemplation of the primary contracting parties, and (3) the primary parties contemplate that the third party would be vested with the right to sue for enforcement of the contract. *Id.* (citing *EPGT Tex. Pipeline, L.P. v. Harris County Flood Control Dist.,* 176 S.W.3d 330, 340 (Tex.App.-Houston [1st Dist.] 2004, pet. dism'd)). The fact that a third party receives incidental benefits from a contract is not sufficient to establish a right to enforce the contract. *Id.* at 341.

Here, S.M.R. and Castano both argued that Bray Abarca and Sanchez failed to establish, as a matter of law, that they were entitled to enforce the Subcontract Agreement as third-party beneficiaries. It is clear from looking at the Subcontract Agreement as a whole that the contract between S.M.R. and Castano does not "plainly express" a third-party obligation to employees of subcontractors to Castano and that S.M.R. and Castano, as the primary parties, did not contemplate that Bray Abarca and Sanchez would benefit under the contract or that they would be vested with the right to sue for enforcement of the contract. The Subcontract Agreement devotes its entirety to setting out the relationship and responsibilities of S.M.R. and Castano. Furthermore, the parties specifically listed the owner of the property, Feagan Street Casitas, L.P., as a third-party beneficiary, but did not mention any other parties or groups of people in that section.

Bray Abarca and Sanchez argued in their responses to S.M.R.'s and Castano's motions for summary judgment that the Subcontract Agreement was meant to help workers like themselves, and they quoted the provision in the agreement requiring Castano to provide "scaffolding and [other] equipment ... including all items necessary or usual in work of this kind...." They also cited various provisions in the agreement and its addendum that required Castano to follow certain safety requirements and regulations under OSHA and other laws. However, none of the provisions cited indicate that S.M.R. and Castano, as the primary parties, intended to protect another subcontractor's workers such that those workers could sue to enforce the provisions of the Subcontract Agreement. Rather, these provisions, when read together with all of the provisions of the Subcontract Agreement and its addendum, reflect S.M.R.'s desire to protect itself from liability to any employees of Castano's or Castano's own subcontractors.[2]

2. Bray Abarca and Sanchez also cite testimo- ny by Walter Fish, Ron Harrington, and Cas-

We conclude that S.M.R. and Castano conclusively established as a matter of law that Bray Abarca and Sanchez were not intended to be third-party beneficiaries of the contract between S.M.R. and Castano. *See MCI Telecomms.*, 995 S.W.2d at 650–51; *Science Spectrum*, 941 S.W.2d at 911. Therefore, the trial court did not err in granting summary judgment in favor of S.M.R. and Castano on Bray Abarca's and Sanchez's breach of contract claims. *See Aleman*, 227 S.W.3d at 309 (holding that appellate court will affirm summary judgment if any theory included in motion has merit).

We overrule Bray Abarca's and Sanchez's second issue.

## Negligence Claims

In their first issue, Bray Abarca and Sanchez argue that the trial court erred in granting S.M.R.'s motion for summary judgment based on Chapter 95 of the Texas Civil Practice and Remedies Code because they raised a fact issue on the "non applicability" of Chapter 95, or, alternatively, because they raised a fact issue regarding S.M.R.'s retention of control, actual knowledge of a dangerous condition, and failure to warn.[3] In their third issue, Bray Abarca and Sanchez argue that they raised a fact issue concerning S.M.R.'s and Castano's liability for negligence under the common law.

 In a negligence action, a plaintiff must show that (1) the defendant owed a duty to the plaintiff, (2) the defendant breached that duty, and (3) the breach proximately caused the plaintiff's injuries. *D. Houston, Inc. v. Love*, 92 S.W.3d 450, 454 (Tex.2002). The existence of a duty owed is a threshold consideration and is a question of law for the court. *See Tex. Home Mgmt., Inc. v. Peavy*, 89 S.W.3d 30, 33 (Tex.2002); *Centeq Realty, Inc. v. Siegler*, 899 S.W.2d 195, 197 (Tex.1995).

### A. Negligence Claims against S.M.R.

In its motion for summary judgment, S.M.R. asserted that Bray Abarca's and Sanchez's negligence claim against it failed as a matter of law because, under Chapter 95 of the Texas Civil Practice and Remedies Code, it owed no duty to Bray Abarca and Sanchez. S.M.R. argued, alternatively, that even if the common law was not preempted by Chapter 95, S.M.R. still did not owe a duty to Bray Abarca and Sanchez. Bray Abarca and Sanchez responded that Chapter 95 does not apply to their negligence claims against S.M.R. and that, even if it did apply, they raised a fact issue, under both Chapter 95 and the common law concerning S.M.R.'s control, knowledge, and failure to warn.

### 1. Applicability of Chapter 95

Section 95.002 of the Texas Civil Practice and Remedies Code provides as follows:

> This chapter applies only to a claim:
> (1) against a property owner, contractor, or subcontractor for personal in-

tano regarding construction of the Subcontract Agreement. However, this testimony is not relevant to our analysis. *See Esquivel v. Murray Guard, Inc.*, 992 S.W.2d 536, 543 (Tex.App.-Houston [14th Dist.] 1999, pet. denied) (holding that reviewing courts must examine the contract in determining contracting parties' intentions); *see also Bifano v. Econo Builders, Inc.*, 401 S.W.2d 670, 676 (Tex.Civ.App.-Dallas 1966, writ ref'd n.r.e.) ("Parties to a contract are bound by its plain terms and their intentions are to be ascertained from the language of the contract itself and not from what they supposed it to contain.").

3. Bray Abarca and Sanchez actually argue that issue one applies to both S.M.R. and Castano. However, Chapter 95 was a ground argued only by S.M.R., so we discuss it only as it applies to S.M.R.

jury, death, or property damage to an owner, a contractor, or a subcontractor or an employee of a contractor or subcontractor; and

(2) that arises from the condition or use of an improvement to real property where the contractor or subcontractor constructs, repairs, renovates, or modifies the improvement.

TEX. CIV. PRAC. & REM.CODE ANN. § 95.002 (Vernon 2005).

■■■ Bray Abarca and Sanchez argue that Chapter 95 does not apply to their claims because they are not claims against a property owner. However, S.M.R. was a general partner of the entity that owned the property in question. Furthermore, Scott Morgan, president of S.M.R., stated in his affidavit that S.M.R. made all business decisions, including all decisions relating to construction, on behalf of and as the general partner of the property owner. Morgan's affidavit also stated that S.M.R. "served as the general contractor for the construction project and was in possession of the construction site during the time that the project was being built. . . ." This uncontroverted statement by Morgan indicates that S.M.R. acted as a contractor and as the owner's agent on this construction project. *See Walker Ins. Services v. Bottle Rock Power Corp.*, 108 S.W.3d 538, 549 (Tex.App.-Houston [14th Dist.] 2003, no pet.) ("An agent is one who consents to the control of another, the principal, who has manifested consent that the agent shall so act.").

Therefore, S.M.R. is entitled to the protection offered by Chapter 95 as a general partner and agent of the owner. *See Fisher v. Lee and Chang Partnership*, 16 S.W.3d 198, 203 (Tex.App.-Houston [1st Dist.] 2000, pet. denied) ("We hold that sec. 95.003 applies to property owners and also to their agents who oversee their properties.").

## 2. *Liability under Chapter 95*

Section 95.003 provides as follows:

A property owner is not liable for personal injury, death, or property damage to a contractor, subcontractor, or an employee of a contractor or subcontractor who constructs, repairs, renovates, or modifies an improvement to real property, including personal injury, death, or property damage arising from the failure to provide a safe workplace unless:

(1) the property owner exercises or retains some control over the manner in which the work is performed, other than the right to order the work to start or stop or to inspect progress or receive reports; and

(2) the property owner had actual knowledge of the danger or condition resulting in the personal injury, death, or property damage and failed to adequately warn.

TEX. CIV. PRAC. & REM.CODE ANN. § 95.003 (Vernon 2005). Therefore, in order to establish their negligence claim against S.M.R. under Chapter 95, Bray Abarca and Sanchez had to show (1) that S.M.R. retained control over the manner in which Alfredo Abarca, as a subcontractor, and his employees, Bray Abarca and Sanchez, performed the work, and (2) that S.M.R. had actual knowledge of the danger or condition that resulted in Bray Abarca's and Sanchez's injuries and failed to adequately warn them. *See id.*

### a. *Control*

■■■ Control can be established in two ways: by (1) a contractual right of control, or (2) an exercise of actual control. *Ellwood Tex. Forge Corp. v. Jones*, 214 S.W.3d 693, 700 (Tex.App.-Houston [14th Dist.] 2007, pet. denied) (citing *Dow Chem. Co. v. Bright*, 89 S.W.3d 602, 606 (Tex.

2002)). Bray Abarca and Sanchez raise both arguments in this case.

*(1) Contractual control*

A contract may impose control upon a party, thereby creating a duty of care. *Bright,* 89 S.W.3d at 606. If the right of control over work details has a contractual basis, the circumstance that no actual control was exercised will not absolve the general contractor of liability. *Id.* (quoting *Elliott–Williams Co. v. Diaz,* 9 S.W.3d 801, 804 (Tex.1999)). To be liable, the owner must have the right to control the means, methods, or details of the independent contractor's work to the extent that the independent contractor is not entirely free to do the work his own way. *Ellwood,* 214 S.W.3d at 700. Determining whether a contract gives a right of control is generally a question of law for the court rather than a question of fact for the jury. *Bright,* 89 S.W.3d at 606.

Bray Abarca and Sanchez argue that S.M.R. retained contractual control over the project because of the phrase in the addendum to S.M.R.'s Subcontract Agreement with Castano providing that the "[c]ontractor or the contractor's job Superintendent shall have the right to approve or reject the type, size, weight and/or time limits of the Subcontractor's machinery and equipment utilized on the project" and because the contract required Castano to follow certain safety guidelines. However, when read in the context of the entire agreement between S.M.R. and Castano, it is clear that the "right to approve" provision retains S.M.R.'s right to inspect and approve certain aspects of Castano's work, but it does not give S.M.R. the right to control the means, methods, or details of Castano's work to the extent that Castano was not free to do the work his own way. *See Ellwood,* 214 S.W.3d at 700; *see also Victoria Elec. Cooperative, Inc. v. Williams,* 100 S.W.3d 323, 329 (Tex.App.-San Antonio 2002, pet. denied) (holding that contract provision allowing owner right to decide what equipment subcontractor used in transporting utility poles was unpersuasive because it referred to owner's "right to inspect and approve work on the project, which is a right any general contractor has to ensure the work is performed according to contract specifications"). Neither do the provisions requiring Castano to comply with safety regulations and standards retain for S.M.R. a right of control over the details of the work. *See Bright,* 89 S.W.3d at 607 (holding that agreement with similar provisions did not impose upon general contractor any duty of care to employee of independent contractor).

Furthermore, the agreement, when read in its entirety, clearly establishes that Castano was an independent contractor and charges Castano with responsibility for providing all "labor, material, equipment, services and supervision" to complete the work as described in the agreement. Castano discharged this responsibility, in part, by hiring Alfredo Abarca and his crew of workers, including Bray Abarca and Sanchez, pursuant to Castano's own subcontracting agreement with Alfredo Abarca. The agreement between S.M.R. and Castano also specifically charges Castano with the responsibility of enforcing the safety provisions in the addendum.

We conclude that the agreement between S.M.R. and Castano did not impose a duty to Bray Abarca and Sanchez on S.M.R. because S.M.R. did not retain the right to control the means, methods, or details of Alfredo Abarca's or his employees' work. *See Bright,* 89 S.W.3d at 607.

*(2) Actual control*

Bray Abarca and Sanchez also argue that S.M.R. exercised actual control over the work of Alfredo Abarca and his

crew, including Bray Abarca and Sanchez. Again, to be liable, the owner must have the right to control the means, methods, or details of the independent contractor's work to the extent that the independent contractor is not entirely free to do the work his own way. *Ellwood*, 214 S.W.3d at 700. The control must relate to the injury the negligence causes. *Id.* It is not enough that the owner has the right to order the work to stop and start or to inspect progress or receive reports. *Id.* Nor is it enough to recommend a safe manner for the independent contractor's employees to perform the work. *Id.*

To establish that S.M.R. owed them a duty of care, Bray Abarca and Sanchez had to show that S.M.R. exercised control that (1) related to the activity that cause their injuries, (2) involved either the power to direct that the work be done in a certain manner or forbid its being done in an unsafe manner, and (3) related to the injury that the alleged negligence caused. *See Bright*, 89 S.W.3d at 607; *Coastal Marine Serv., Inc. v. Lawrence*, 988 S.W.2d 223, 226 (Tex.1999). Essentially, the evidence must give rise to an inference that the supervising entity specifically approved the dangerous act. *See Lee Lewis Constr. Inc. v. Harrison*, 70 S.W.3d 778, 783–84 (Tex.2001) (holding general contractor's designated safety supervisor approved lanyard fall-protection system and use of "bosun's" chair without independent life-line and therefore retained right to control deceased worker's activity); *Bright*, 89 S.W.3d at 609 ("[W]e have never concluded that a general contractor actually exer-

cised control of a premises [when] there was no prior knowledge of a dangerous condition and no specific approval of any dangerous act.").

S.M.R. argued in its motion for summary judgment that Bray Abarca and Sanchez failed, as a matter of law, to show any evidence that it had exercised actual control over the work performed by Alfredo Abarca and his crew, including Bray Abarca and Sanchez. Bray Abarca and Sanchez responded by arguing that Alfredo Abarca's deposition testimony raised a fact issue concerning S.M.R.'s control over the work performed by Bray Abarca and Sanchez.[4]

When viewed in the light most favorable to the non-movant, Alfredo Abarca's deposition testimony is sufficient to raise a fact issue on S.M.R.'s exercise of actual control over the details of Bray Abarca's and Sanchez's work. Alfredo Abarca's testimony established that (1) he understood that a scaffold was required for him to do the work he contracted with Castano to perform; (2) Castano and Harrington, S.M.R.'s site superintendent, gave him an "option" concerning how to acquire the scaffold; (3) Castano and Harrington gave him permission to use some of their materials on site to build the scaffold; (4) Castano and Harrington were present and "supervising the job" while he and Sanchez built the scaffold; and (5) Castano, while Harrington was present, gave him suggestions and an "orientation" regarding how to build the scaffold that caused Bray Abarca's and Sanchez's injury.[5] These

---

4. In their appellate brief, Bray Abarca and Sanchez discuss the acts indicating S.M.R.'s and Castano's exercise of actual control together. However, we are analyzing their arguments here in light of the claims against S.M.R.

5. When Alfredo Abarca was asked, "So what did [Castano] tell you about how to build the

scaffold?" he replied, "To do—to make the wooden post, which had to be aluminum for the jacks." It is not actually clear from this testimony if Castano was telling him that the posts should be made of aluminum or if this was advice about how to construct a wooden post. Alfredo Abarca also testified that Castano, with Ron Harrington present, gave him

facts are sufficient to raise a fact issue regarding S.M.R.'s control related to the activity that caused Bray Abarca and Sanchez's injuries—i.e., the construction and use of the scaffold—and the manner in which they worked. *See Bright,* 89 S.W.3d at 607. Alfredo Abarca's testimony that Harrington was present and "supervising" the construction of the scaffold and that he approved the use of on-site materials to construct the scaffold gives rise to an inference that S.M.R., through Harrington, specifically approved the dangerous act. *See Lee Lewis Constr.,* 70 S.W.3d at 783–84.

b. *Knowledge and Failure to Adequately Warn*

 S.M.R. argues that, even if we find that it exercised control over Bray Abarca's and Sanchez's work, it still cannot be held liable under Chapter 95 because Bray Abarca and Sanchez failed to show that S.M.R. had "actual knowledge of the danger or condition resulting in the personal injury, death, or property damage and failed to adequately warn." *See* TEX. CIV. PRAC. & REM.CODE ANN. § 95.003(2). Specifically, S.M.R. argues that there was no evidence that it had actual knowledge of the dangerous nature of the scaffold constructed by Alfredo Abarca and Sanchez and that the deposition testimony of Bray Abarca and Sanchez demonstrated that they were aware that the scaffold was dangerous and proceeded to use it anyway. *See Dyall v. Simpson Pasadena Paper Co.,* 152 S.W.3d 688, 705 (Tex.App.-Houston [14th Dist.] 2004, pet. denied) (holding that Chapter 95 requires plaintiff to show both control and actual knowledge with

failure to adequately warn of danger in order to prevail).

However, viewing the evidence in the light most favorable to the non-movants, we conclude that Alfredo Abarca's testimony that Harrington and Castano were present while the scaffold was built and gave instructions regarding its construction is sufficient to raise a fact question regarding Harrington's, and therefore S.M.R.'s, actual knowledge that the scaffold was dangerous. Moreover, there is no evidence that Harrington or Castano specifically warned Bray Abarca or Sanchez about the danger of collapse, and their provision of the materials and Alfredo Abarca's testimony that they provided instructions for building the scaffold is some evidence that neither S.M.R. nor Castano adequately warned of the danger. Although Bray Abarca and Sanchez testimony might establish that they were aware of some of the dangers involved in using the scaffolding (i.e., the danger of falling due to the lack of railing and thinking that the materials used were not intended to be used as a scaffold), we conclude that the evidence here is not sufficient to establish as a matter of law that they were adequately warned of the particular danger that actually befell them (i.e., the danger of collapsing). Therefore, the summary judgment evidence is also sufficient to raise a fact issue concerning whether Bray Abarca and Sanchez were adequately warned of the danger that the scaffold could collapse.[6]

We conclude that summary judgment was improper on this issue because Bray Abarca and Sanchez raised both a fact

---

an "orientation" about how to build the scaffold.

6. Our holding that this evidence raises a fact issue concerning whether Bray Abarca and Sanchez were adequately warned of the dan-

ger involved in using the scaffold is limited to the particular facts raised in this case. This holding is not intended to supply a general rule regarding the duty to warn or safety standards of scaffolds.

issue regarding S.M.R.'s exercise of actual control over the work done by Alfredo Abarca and his employees, Bray Abarca and Sanchez, and a fact issue regarding S.M.R.'s actual knowledge of the danger and failure to adequately warn. *See Bright,* 89 S.W.3d at 607.

We sustain Bray Abarca and Sanchez's first issue as it relates to their negligence claims based on the exercise of actual control and actual knowledge with failure to warn against S.M.R. as governed by Chapter 95 of the Civil Practice and Remedies Code.

We note that Chapter 95 of the Civil Practice and Remedies Code preempts common law claims. *See Phillips v. Dow Chem. Co.,* 186 S.W.3d 121, 131–32 (Tex.App.-Houston [1st Dist.] 2005, no pet.); *see also Dyall v. Simpson Pasadena Paper Co.,* 152 S.W.3d 688, 710 (Tex. App.-Houston [14th Dist.] 2004, pet. denied) (recognizing that Chapter 95 encompasses all common-law negligence claims). Therefore, Bray Abarca and Sanchez are limited on remand to consideration of only the claims envisioned by Chapter 95.

We overrule Bray Abarca and Sanchez's third issue as it relates to S.M.R.

## B. Negligence Claims against Castano

In his motion for summary judgment, Castano asserted that Bray Abarca's and Sanchez's negligence claim against him failed as a matter of law because he owed them no duty under the common law. Sanchez and Bray Abarca responded that they raised a fact issue concerning Castano's control, knowledge, and failure to warn. Because Bray Abarca and Sanchez were employees of Alfredo Abarca, who was himself an independent contractor hired by Castano, the principles that govern a general contractor's duty to a subcontractor's employees determine whether Castano, in his role as a general contrac-

tor, owed a duty to Bray Abarca and Sanchez. *See Bright,* 89 S.W.3d at 605–06.

Generally, a general contractor does not have a duty to see that a subcontractor performs work in a safe manner. *Perez v. Embree Const. Group, Inc.,* 228 S.W.3d 875, 881 (Tex.App.-Austin 2007, pet. denied) (citing *Redinger v. Living, Inc.,* 689 S.W.2d 415, 418 (Tex.1985)). However, a limited duty arises if a general contractor retains control over a subcontractor's methods of work or operative details to the point that the subcontractor is not entirely free to do the work in his own way. *Id.* (citing *Koch Refining Co. v. Chapa,* 11 S.W.3d 153, 154 (Tex.1999)). The general contractor's "duty of reasonable care is commensurate with the control it retains" over the subcontractor. *Hoechst–Celanese Corp. v. Mendez,* 967 S.W.2d 354, 355 (Tex.1998). General supervisory control that does not relate to the activity causing the injury is not sufficient to create a duty. *Perez,* 228 S.W.3d at 881. However, "an employer who gives on-site orders or provides detailed instructions on the means or methods to carry out a work order owes the independent contractor employee a duty of reasonable care to protect him from work-related hazards." *Hoechst–Celanese,* 967 S.W.2d at 357.

Again, under the common law, Bray Abarca and Sanchez had to show that Castano retained control over the method or operative details of the work of Alfredo Abarca and his employees. *See Perez,* 228 S.W.3d at 881. The analysis for establishing contractual or actual control over the work of a subcontractor is the same under Chapter 95 or the common law. *See Phillips,* 186 S.W.3d at 132 (stating that control provision of section 95.003 "codifies the common-law holding of *Redinger v. Living,* 689 S.W.2d 415, 418 (Tex.1985)").

Bray Abarca and Sanchez argued that Castano retained contractual control over their work, citing the Subcontract Agreement between S.M.R. and Castano. The agreement between Castano and S.M.R. provided that Castano was responsible for providing "all materials as ... specified and all tools, accessories, scaffolding and equipment which may be necessary to property execute the Work." Castano argues that Bray Abarca and Sanchez's argument fails to consider the effect of the Subcontract Agreement between Castano and Alfredo Abarca.

The Subcontract Agreement between Castano and Alfredo Abarca, including the "Subcontractor's Waiver," designated Alfredo Abarca as an independent contractor to Castano and provided that Alfredo Abarca "shall be solely responsible for all supervision and coordination of the work and for all responsible [sic] precautions needed to carry out such work in a manner safe for both the project and all people involved therein." However, nothing in Castano's written agreements with Alfredo Abarca imposed a responsibility for providing the scaffolding on Alfredo Abarca. Because Castano retained a contractual responsibility to provide the scaffolding required to complete the work, Castano retained a contractual right of control over the scaffolding that ultimately caused Bray Abarca and Sanchez's injuries.

Castano's responsibility here is distinguishable from *Williams,* in which the court of appeals held that a contract provision retaining for the property owner the right to decide what equipment the subcontractor used in transporting utility poles did not create a right of control because that provision only referred to the owner's "right to inspect and approve work on the project, which is a right any general contractor has to ensure the work is performed according to contract specifications." *See Williams,* 100 S.W.3d at 329. Here, Castano's contractual responsibility to provide the scaffolding creates a right to control the details of his subcontractor's work to the extent that Alfredo Abarca and his employees were not free to do the work in their own way. *See Ellwood,* 214 S.W.3d at 700.

 We conclude that the contracts governing Castano's obligations in completing the work on the project—Castano's agreement with S.M.R. to provide scaffolding and the subsequent Subcontract Agreement between Alfredo Abarca and Castano and the subcontractor's waiver signed by Alfredo Abarca, which did not shift the responsibility for providing the scaffolding to Alfredo Abarca—did impose a duty on Castano because Castano retained the right to control the methods or operative details of Alfredo Abarca's and his employees' work as it related to the scaffolding.[7] *See Perez,* 228 S.W.3d at 881; *see also Bright,* 89 S.W.3d at 606.

7. Castano argues that Alfredo Abarca was responsible for providing all of the tools and equipment necessary to complete the work Castano hired him to complete. He cites his deposition testimony that he gave Abarca money with which to rent or purchase scaffolding. This conflicts with Alfredo Abarca's deposition testimony that Castano only paid him money that was due to be paid to his workers. This testimony would be sufficient to raise a fact issue as to the actual control of the scaffolding. However, none of this testimony changes the obligations of the parties as set out in the contracts. Castano was contractually obligated to provide the scaffolding on the site, and Alfredo Abarca was contractually obligated only to "perform the work and provide the material" described in his subcontractor agreement with Castano. Alfredo Abarca's subcontractor agreement described "the work to be performed" as "framing, windstrong ties, drywall (fire code), wall sheathing, roof decking, cornice, siding, windows, ext. doors, tyvek, all interior details and punch out." The contract between Castano

■ We conclude that summary judgment was improper on this issue because Bray Abarca's and Sanchez established that Castano retained a contractual right to control the scaffolding used by Alfredo Abarca and his employees, Bray Abarca and Sanchez.[8] *See Ellwood*, 214 S.W.3d at 700.

We sustain Bray Abarca's and Sanchez's third issue as it relates to their negligence claims against Castano.

## Negligence Per Se Claims

In their fourth issue, Bray Abarca and Sanchez argue that they raised a fact issue concerning S.M.R.'s and Castano's negligence per se.

### A. Negligence per se of S.M.R.

■ We have already held that Chapter 95 applied to Bray Abarca's and Sanchez's allegations against S.M.R. and that Bray Abarca and Sanchez failed to establish that S.M.R. owed them a duty of care. Chapter 95 preempts their other common law claims, including the negligence per se claim. *See Phillips*, 186 S.W.3d at 131–32; *see also Dyall*, 152 S.W.3d at 710 (recognizing that Chapter 95 encompasses all common-law negligence claims); *Kelly v. LIN Television*, 27 S.W.3d 564, 569–70 (Tex.App.-Eastland 2000, pet. denied) (holding that Chapter 95 encompassed assertions of negligence, negligence per se, res ipsa loquitur, and negligent misrepresentation).

Therefore, we conclude that the trial court properly granted S.M.R.'s motion for summary judgment on Bray Abarca's and Sanchez's negligence per se claims.

We overrule Bray Abarca's and Sanchez's fourth issue as it relates to S.M.R.

### B. Negligence per se of Castano

■ In his motion for summary judgment, Castano argued that Bray Abarca's and Sanchez's negligence per se claims based on OSHA violations are not recognized under Texas law, and, therefore, failed as a matter of law. Bray Abarca and Sanchez responded that their claims were valid because the subcontract agreement between S.M.R. and Castano specifically provided for OSHA compliance.

■ Regulations promulgated under the OSHA statute neither create an implied cause of action nor establish negligence per se. *McClure v. Denham*, 162 S.W.3d 346, 353 (Tex.App.-Fort Worth 2005, no pet.) (citing *Melerine v. Avondale Shipyards, Inc.*, 659 F.2d 706, 707 (5th Cir.1981)). Texas courts have also held that the common law duties imposed by state law are not expanded by OSHA regulations. *Id.; Richard v. Cornerstone Constrs., Inc.*, 921 S.W.2d 465, 468 (Tex. App.-Houston [1st Dist.] 1996, writ denied); *see also M–T Petroleum, Inc. v.*

---

and Alfredo Abarca did not require Alfredo Abarca to provide any tools or scaffolding, while the contract between Castano and S.M.R. required Castano to provide scaffolding. When parties have entered into an unambiguous contract—one that can be given a definite or certain legal meaning—we will enforce the intention of the parties as written in the instrument. *See SAS Inst., Inc. v. Breitenfeld*, 167 S.W.3d 840, 841 (Tex.2005); *Sun Oil Co. v. Madeley*, 626 S.W.2d 726, 731 (Tex. 1981).

8. Castano also argues that he did not exercise actual control over the work of Alfredo Abarca and his employees, Bray Abarca and Sanchez. However, if the right of control over work details has a contractual basis, the circumstance that no actual control was exercised will not absolve the general contractor of liability. *See Bright*, 89 S.W.3d at 606. Moreover, as we already explained in our discussion of the negligence claims against S.M.R., the record raises a fact issue as to Castano's exercise of actual control over the building of the scaffold.

*Burris,* 926 S.W.2d 814, 818 (Tex.App.-El Paso 1996, no writ) (rejecting expansion of premises owner's duty to independent contractor and holding OSHA standards did not create duty whose breach was negligence per se).

We have already held that the contract between S.M.R. and Castano did not confer any benefits on Bray Abarca and Sanchez because they were not third-party beneficiaries of that contract. Because the OSHA regulations do not expand the common law duties imposed by state law, we hold that Bray Abarca's and Sanchez's negligence per se claims also fail as a matter of law. *See McClure,* 162 S.W.3d at 353.

We conclude that the trial court properly granted Castano's motion for summary judgment on Bray Abarca's and Sanchez's negligence per se claims.

We overrule the remainder of Bray Abarca's and Sanchez's fourth issue.

### S.M.R.'s No–Evidence Motion for Summary Judgment

In their fifth issue, Bray Abarca and Sanchez argue that the trial court erred in granting S.M.R.'s no-evidence motion for summary judgment on their breach of contract and negligence claims.[9] Because we have already determined that the trial court's grant of summary judgment on the breach of contract claim was correct on the grounds raised in S.M.R.'s traditional motion for summary judgment, we do not need to address the separate grounds, if any, raised in the no-evidence portion of S.M.R.'s motion for summary judgment. *See Aleman,* 227 S.W.3d at 309 (holding that appellate court will affirm summary judgment if any theory included in motion

has merit). Regarding the negligence claims, we have already determined that Bray Abarca and Sanchez presented summary judgment evidence raising genuine issues of material fact concerning S.M.R.'s exercise of actual control over Bray Abarca and Sanchez's work under Chapter 95 of the Civil Practice and Remedies Code, as well as S.M.R.'s actual knowledge of the danger and failure to adequately warn. And we have held that these claims preempt Bray Abarca's and Sanchez's common law negligence claims against S.M.R. *See Phillips,* 186 S.W.3d at 131–32; *see also Dyall,* 152 S.W.3d at 710 (recognizing that Chapter 95 encompasses all common-law negligence claims).

We overrule Bray Abarca's and Sanchez's fifth issue.

### Castano's Request for Sanctions

 In his appellate brief, Castano requests that this Court sanction Bray Abarca and Sanchez for bringing a frivolous appeal. Texas Rule of Appellate Procedure 45 provides,

> If the court of appeals determines that an appeal is frivolous, it may—on motion of any party or on its own initiative, after notice and a reasonable opportunity for response—award each prevailing party just damages. In determining whether to award damages, the court must not consider any matter that does not appear in the record, briefs, or other papers filed in the court of appeals.

Tex.R.App. P. 45. To objectively determine whether an appeal is frivolous, we look at the record from the viewpoint of the advocate and decide whether he had reasonable grounds to believe that the case could be reversed. *Smith v. Brown,* 51 S.W.3d 376,

---

9. Again, Bray Abarca and Sanchez argue that issue five applies to both S.M.R. and Castano. However, only S.M.R. filed a no-evidence motion for summary judgment with the trial court, so this issue only applies to S.M.R.

381 (Tex.App.-Houston [1st Dist.] 2001, pet. denied).

Here, Bray Abarca and Sanchez have not offered any response to Castano's request for sanctions. However, in their appellate brief, Bray Abarca and Sanchez argued several grounds that they could have reasonably believed were not frivolous but could lead to the reversal of the trial court's judgment. We have held that their arguments that they raised fact issues concerning S.M.R.'s and Castano's control over their work, knowledge, and failure to adequately warn were meritorious. Therefore, we deny Castano's request for sanctions. *See Smith,* 51 S.W.3d at 381.

### Conclusion

We affirm the judgment of the trial court granting S.M.R.'s and Castano's motions for summary judgment on Bray Abarca's and Sanchez's breach of contract and negligence per se claims. We reverse the judgment of the trial court granting S.M.R.'s and Castano's motions for summary judgment on Bray Abarca's and Sanchez's negligence claims against S.M.R. under Chapter 95 of the Civil Practice and Remedies Code and against Castano under the common law, and we remand the cause to the trial court for proceedings consistent with this opinion.