**AFFIRM; and Opinion Filed May 25, 2016.**



In The

## Court of Appeals
## Fifth District of Texas at Dallas

### No. 05-14-00575-CV

### FELIPE CARDONA, Appellant

### V.

### SIMMONS ESTATE HOMES I, LP D/B/A SIMMONS ESTATE HOMES, JOE HALL ROOFING, INC., MCH PERSONNEL MGT, INC., AND ALFREDO DERAS, Appellees

**On Appeal from the 116th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-12-05101**

## MEMORANDUM OPINION
Before Justices Lang-Miers, Fillmore, and Schenck
Opinion by Justice Lang-Miers

Appellant Felipe Cardona suffered injuries after he fell from the roof of a residential construction site where he was working. He sued appellees Simmons Estate Homes I, LP d/b/a Simmons Estate Homes, Joe Hall Roofing, Inc., MCH Personnel Mgt, Inc., and Alfredo Deras alleging negligence and joint enterprise claims. The trial court granted appellees' motions for summary judgment dismissing all of appellant's claims. In two issues on appeal, appellant argues that the trial court erred by not sustaining appellant's objections to portions of affidavits submitted by appellees as summary judgment evidence and by granting appellees' summary judgment motions. Because all dispositive issues are settled in law, we issue this memorandum opinion. TEX. R. APP. P. 47.2(a), 47.4. We affirm.

BACKGROUND

For background, we first explain the contractual relationships of the parties. James C. and Shelli Orr had a contract with Simmons Estate Homes I, LP d/b/a Simmons Estate Homes for Simmons to build a house for the Orrs. The contract provided that Simmons was "an Independent Contractor" and was "not an agent or employee" of the Orrs. Simmons had a Subcontractor/Supplier Agreement with Joe Hall Roofing to install a roof on the house. That contract specified that Joe Hall Roofing was "an independent contractor" and was "not an employee" of Simmons. Joe Hall Roofing already had a contract with MCH Personnel Mgt, Inc. for MCH to provide roofing subcontractors to Joe Hall Roofing. And MCH entered into a Subcontractor's Agreement with Alfredo Deras that provided that Deras would "BE AVAILABLE TO P[ER]FORM VARIOUS CONTRACT JOBS AND/OR SERVICES FOR MCH" "AS AN **INDEPENDENT CONTRACTOR** TO **MCH**[.]" MCH hired Deras "to provide roofing services at" the Orrs' property. Deras hired Justino Roque[1] to install the roof and Roque in turn hired appellant and Pedro Aldana to perform the roofing work.[2]

Appellant testified by deposition that he was working for Roque on the day that he was injured at the construction site. He testified that Roque paid him for his work on the roof, told him "when he was on this roof . . . what [he was] supposed to do[,]" and told him when he should be at work and when he could leave. Appellant testified that "during all the time that [he] worked on this house where [he] fell" he did not "receive instruction from anyone other than Mr. Roque[.]" Appellant also testified that no one other than Roque gave instructions to the roofers at the job site and that he did not know Deras or anyone who worked for Joe Hall Roofing, MCH, or Simmons.

---

[1] Appellant also filed suit against Roque. Roque is not a party to this appeal.

[2] The record does not contain a written contract between Deras and Roque or a written contract between Roque and appellant.

Appellant testified that, at the time he fell and was injured, he was standing on what appellant called a scaffold that he and co-worker Aldana constructed of two-by-fours, with some boards standing upright and some lying flat, in order to reach a slope on the roof. Appellant testified that Roque instructed Aldana how to build the structure and watched appellant and Roque build it. Appellant testified that he had never stood on that type of scaffold prior to that day and that he fell when a board on it moved or bent.

Appellant alleged negligence and joint enterprise claims against appellees. Appellees moved for traditional summary judgment on appellant's negligence claims on the ground that, as a matter of law, appellees did not owe appellant a duty, which is an element of appellant's negligence claims. Appellees also moved for traditional summary judgment on appellant's joint enterprise claims on the ground that, as a matter of law, appellees negated at least one element of appellant's joint enterprise claims. The trial court ultimately granted appellees' motions. Appellant appeals and argues that the trial court erred by not sustaining his objections to portions of appellees' summary judgment affidavits and by granting appellees' motions for summary judgment.

## SUMMARY JUDGMENT AFFIDAVITS

In his first issue, appellant argues that the trial court abused its discretion when it did not sustain his objections to portions of affidavits attached as evidence to appellees' summary judgment motions. We review a trial court's decision to admit or exclude summary judgment evidence under an abuse of discretion standard. *Holloway v. Dekkers*, 380 S.W.3d 315, 320 (Tex. App.—Dallas 2012, no pet.). We must uphold the trial court's ruling if the record shows any legitimate basis supporting that ruling. *Id.* In addition, the erroneous admission of evidence requires reversal only if the error probably—though not necessarily—resulted in an improper judgment. *Kia Motors Corp. v. Ruiz*, 432 S.W.3d 865, 883 (Tex. 2014); *see* TEX. R. APP. P.

–3–

44.1(a)(1) (providing court of appeals may reverse if it concludes that error complained of "probably caused the rendition of an improper judgment"). In determining whether the trial court's error was harmful, "[w]e review the entire record, and require the complaining party to demonstrate that the judgment turns on the particular evidence admitted." *Kia Motors Corp.*, 432 S.W.3d at 883 (quoting *Nissan Motor Co. Ltd. v. Armstrong*, 145 S.W.3d 131, 144 (Tex. 2004)); *see Mira Mar Dev. Corp. v. City of Coppell, Tex.*, 421 S.W.3d 74, 84 (Tex. App.— Dallas 2013, no pet.) ("It is the appellant's burden to show harm from an erroneous evidentiary ruling."). "Clearly, erroneous admission is harmless if it is merely cumulative." *Nissan*, 145 S.W.3d at 144; *see Strong v. Strong*, 350 S.W.3d 759, 764 (Tex. App.—Dallas 2011, pet. denied).

Appellant argues that portions of the affidavits of Alfredo Deras, Brett Hall, president of Joe Hall Roofing, Kay Orr, the registered agent for MCH, and Jonathan Hebb, senior project manager for Simmons, are conclusory or are inadmissible on other grounds.[3] Appellees argue that—even if statements in the affidavits are conclusory (which appellees dispute)—the trial court's consideration of them did not cause an improper judgment because other summary judgment evidence conclusively proved that appellees did not owe a duty to appellant. We agree with appellees.

Even assuming, without deciding, that portions of the statements in Deras's, Hall's, Orr's, and Hebb's affidavits are conclusory or are inadmissible on grounds raised by appellant and even if the trial court erred by considering this evidence, we will not reverse unless the error "probably caused the rendition of an improper judgment." TEX. R. APP. P. 44.1(a)(1); *see Mira*

---

[3] Given our disposition of this issue, we do not address whether appellant preserved his objections to the affidavits of Deras, Hall, Orr, and Hebb.

–4–

*Mar*, 421 S.W.3d at 84. The erroneous admission of this evidence is harmless if it is merely cumulative. *See Nissan*, 145 S.W.3d at 144.

The disputed portions of the affidavits relate to whether appellees owed appellant a duty. And, as discussed in the remainder of the opinion, other evidence in the summary judgment record establishes that appellees did not owe appellant a duty and that there is no genuine issue of fact regarding that element of his claim. Consequently, we conclude any error in not sustaining appellant's objections to the affidavits was harmless. *See Kia Motors Corp.*, 432 S.W.3d at 883; *Mira Mar*, 421 S.W.3d at 84; *see also In re M.S.*, 115 S.W.3d at 534, 538–39 (Tex. 2003). We resolve appellant's first issue against him.

## NEGLIGENCE

As part of his second issue, appellant argues that the trial court erred in granting traditional summary judgment on appellant's negligence claims. Appellees argue that the summary judgment evidence established as a matter of law that appellees did not owe appellant a duty. In response, appellant argues that the summary judgment evidence raised an issue of fact concerning whether appellees owed a duty to appellant.

### Standard of Review and Applicable Law

We review a motion for summary judgment de novo. *Merriman v. XTO Energy, Inc.*, 407 S.W.3d 244, 248 (Tex. 2013). Additionally, we review the evidence presented in the motion and response in the light most favorable to the nonmovant, crediting evidence favorable to the nonmovant if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). When a party moves for traditional summary judgment, it must prove that there is no genuine issue of material fact and it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *State v. Ninety Thousand Two Hundred Thirty-Five Dollars and No Cents in U.S.*

–5–

*Currency ($90,235)*, 390 S.W.3d 289, 292 (Tex. 2013). A defendant who conclusively negates at least one essential element of a claim is entitled to summary judgment on that claim. *IHS Cedars Treatment Ctr. of DeSoto, Tex., Inc. v. Mason*, 143 S.W.3d 794, 798 (Tex. 2004). Once the defendant establishes a right to summary judgment, the burden shifts to the plaintiff to raise a genuine issue of material fact with regard to the element challenged by the defendant. *Centeq Realty, Inc. v. Siegler*, 899 S.W.2d 195, 197 (Tex. 1995).

To prevail on his negligence claim, appellant must establish the elements of his claim: the existence of a duty, a breach of that duty, and damages proximately caused by the breach. *Nabors Drilling, U.S.A., Inc. v. Escoto*, 288 S.W.3d 401, 404 (Tex. 2009). And the threshold inquiry is whether the defendant owes a legal duty to the plaintiff. *Centeq*, 899 S.W.2d at 197. The existence of a duty is a question of law for the court to decide from the facts surrounding the occurrence in question. *Id.*

Generally, a premises owner or general contractor does not owe any duty to ensure that an independent contractor performs his work in a safe manner. *Koch Ref. Co. v. Chapa*, 11 S.W.3d 153, 155 (Tex. 1999) (per curiam); *Gonzalez v. VATR Const. LLC*, 418 S.W.3d 777, 784 (Tex. App.—Dallas 2013, no pet.). And the law concerning a general contractor's duties to a subcontractor's employees governs whether appellees owed appellant a duty of care. *See Dow Chem. Co. v. Bright*, 89 S.W.3d 602, 605 (Tex. 2002); *Gonzalez*, 418 S.W.3d at 784. A limited duty arises if a general contractor or premises owner retains control over a subcontractor's methods of work or operative details to the point that the subcontractor is not entirely free to do the work in his own way. *Koch*, 11 S.W.3d at 155. The general contractor's or premises owner's "duty of reasonable care is commensurate with the control it retains" over the subcontractor. *Hoechst-Celanese Corp. v. Mendez*, 967 S.W.2d 354, 355 (Tex. 1998); *see Gonzalez*, 418 S.W.3d at 784. The more the general contractor controls the independent

contractor's work, the greater the general contractor's responsibility is for any injuries that result. *Hoechst-Celanese*, 967 S.W.2d at 356; *Gonzalez*, 418 S.W.3d at 885.

General supervisory control, however, that does not relate to the activity causing the injury is not sufficient to create a duty. *Gonzalez*, 418 S.W.3d at 785. As a result, merely exercising or retaining a general right to recommend a safe manner for the independent contractor's employees to perform their work is not enough to impose a duty. *See Koch*, 11 S.W.3d at 155; *Gonzalez*, 418 S.W.3d at 785. In addition, there must be a nexus between a general contractor's retained supervisory control and the condition or activity that caused the injury. *Hoechst-Celanese*, 967 S.W.2d at 357; *Gonzalez*, 418 S.W.3d at 785.

A party can establish the right to control in two ways: by (1) a contractual right of control or (2) an exercise of actual control. *Gonzalez*, 418 S.W.3d at 785; *see Dow*, 89 S.W.3d at 606. When a written contract assigns the right of control to the general contractor, the plaintiff need not prove an actual exercise of control to establish a duty. *See Gonzalez*, 418 S.W.3d at 785; *see also Dow*, 89 S.W.3d at 606. Conversely, if the contract does not explicitly assign control over the manner of work to the general contractor, then the plaintiff must present evidence of the actual exercise of control by the general contractor. *See Gonzalez*, 418 S.W.3d at 785; *see also Dow*, 89 S.W.3d at 606.

## Analysis

Appellant argues that the trial court erred in granting summary judgment to appellees on appellant's negligence claims.[4]

---

[4] Appellant argues that the trial court erred when it failed to "find" that each appellee owed a duty to appellant. But the trial court was not asked to make that finding in appellees' motions for summary judgment. We interpret appellant's argument to be that he raised a genuine issue of material fact precluding summary judgment, because he states elsewhere in his brief, "Appellant demonstrated that 'genuine' fact questions exist on the duty element of his negligence claim . . . , which preclude any summary [j]udgment 'as a matter of law' for any of Appellees."

**Claim that Simmons Owed a Duty to Appellant**

We first consider whether appellant raised a genuine issue of material fact with regard to whether Simmons, the general contractor, owed a duty to appellant.

*Contractual Control*

Appellant argues that Simmons, as the general contractor, is liable for acts of its independent contractors because it retained the right to control the means, methods, or details of the independent contractors' work and because the control that Simmons retained related to the injury its negligence caused. To support its argument, appellant argues that provisions of Simmons's contract, as the general contractor, with the house owners, the Orrs, stated: (1) Simmons would construct a residential dwelling for the Orrs, (2) Simmons would "be solely responsible for all construction means, methods, techniques and procedures for coordinating all portions of the work under the contract[,]" (3) Simmons would be responsible for "'subcontractors' not hired by" the Orrs,[5] and (4) neither party could assign the contract without consent of the other party. Conversely, Simmons argues that, under controlling case law, appellant did not raise a fact issue that Simmons owed *him* a duty based on the provisions of the contract between Simmons and the property owners. We agree with Simmons.

The contract upon which appellant relies is between Simmons and the property owners, the Orrs. Roque, the sub-subcontractor who hired appellant, is not a party to that contract and that contract is multiple tiers of subcontractors removed from Roque. Second, the contract provisions granting Simmons responsibility for "all construction" under the contract and restricting the right of assignment are not sufficient to establish a duty to subcontractors' employees because they do not grant Simmons the right to control the means, methods, or details

---

[5] The contract provision that appellant refers to does not provide that Simmons would be responsible for all contractors not hired by the Orrs, but states, "Builder shall be solely responsible for all construction means, methods, techniques and procedures for coordinating all portions of the work under the contract; however, Builder will not be held accountable or be responsible for any subcontractors and or material suppliers that Owner may hire."

–8–

of the independent contractors' work and are not related to the condition or activity that created the injury. *See Chevez v. Brinkerhoff*, No. 05-13-00572-CV, 2014 WL 7246798, at \*3–5 (Tex. App.—Dallas Dec. 22, 2014, no pet.) (mem. op.) (concluding general contractor owed no duty to employee of subcontractor who sustained injuries when he fell from scaffolding based on contract between general contractor and homeowner that gave general contractor general rights of supervision); *Gonzalez*, 418 S.W.3d at 787 (concluding general contractor owed no duty to injured employee of subcontractor based on third-party contracts multiple levels removed from employee that provided that general contractor retained no responsibility for subcontractors' work); *Davis v. R. Sanders & Assocs. Custom Builders, Inc.*, 891 S.W.2d 779, 782 (Tex. App.—Texarkana 1995, no writ) (concluding general contractor owed no duty to employee of sub-subcontractor injured by falling scaffolding because, among other reasons, sub-subcontractor was not a party to contract between general contractor and subcontractor and contract provisions concerning laws and safety requirements did not concern the details of the work).[6] Consequently, we conclude that appellant did not raise a fact issue concerning whether Simmons had a contractual right of control over appellant.

### *Actual Control*

To support his argument that he raised a genuine issue of material fact as to whether Simmons had actual control, appellant relies on deposition testimony of Simmons's project manager, Jonathan Hebb, that (1) Hebb's "job responsibilities" as "project manager at Simmons" included the "scheduling of all the different subcontract, independent contractors[,]" (2) he "tried to be" at the Orrs' house "once a day" and he would spend "[b]etween one and three hours" at

---

[6] Appellant also discusses *Lawson-Avila Construction, Inc. v. Stoutamire*, 791 S.W.2d 584, 586, 589 (Tex. App.—San Antonio 1990, writ denied), and the description of the holding in *Stoutamire* in two cases—*Welch v. McDougal*, 876 S.W.2d 218, 223 (Tex. App.—Amarillo 1994, writ denied), and *McClure v. Denham*, 162 S.W.3d 346, 353 (Tex. App.—Fort Worth 2005, no pet.)—for the proposition that a contract between a general contractor and project owner can impose a duty of control on a general contractor and a resulting duty of care to an independent contractor's employees. But in *Stoutamire*, the court considered evidence of the actual exercise of control "[i]n addition to the contract" in concluding that, "under these facts, there was sufficient evidence of appellant's right to control[.]" 791 S.W.2d at 589–91.

the site, and he would talk to the "go-to person" for "each independent contractor at the site[,]" and (3) there were "times at the Orr's house where decisions ha[d] to be made on the site[.]" But this testimony reflects Simmons's general supervisory control. And general supervisory control that does not relate to the activity causing the injury is not sufficient to create a duty. *See Gonzalez*, 418 S.W.3d at 785; *Perez v. Embree Constr. Grp., Inc.*, 228 S.W.3d 875, 881 (Tex. App.—Austin 2007, pet. denied). In addition, appellant testified by deposition that he was working for Roque on the day of his fall, Roque told him when to arrive and when he could leave at the end of each day, Roque paid him, Roque gave him instructions when he was working on the roof, Roque instructed Aldana concerning how to build the structure that appellant stood on when he was trying to reach a portion of the roof, Roque watched appellant and Aldana build it, and a board on this structure bent or moved, causing appellant to fall. Appellant also testified that he and the rest of the roofing crew did not receive instruction from anyone other than Roque. When asked if he knew "anyone that works for Simmons Estate Homes[,]" appellant testified, "I don't know that—those people." Based on the summary judgment evidence, appellant did not know anyone from Simmons, the only person directing appellant and his co-worker was Roque, and "none of [Simmons's] employees directed the building or the use" of the structure involved in the accident. *Davis,* 891 S.W.2d at 782. Consequently, appellant did not raise an issue of fact about whether Simmons "retain[ed] or exercise[d] a right of control over the details of the work performed by the sub-subcontractor." *Id.*

We conclude that the summary judgment evidence established as a matter of law that Simmons did not exercise contractual or actual control and, as a result, did not owe a duty to appellant and appellant did not raise a fact issue concerning the element of duty. We further conclude that the trial court did not err by granting summary judgment on appellant's negligence claims against Simmons.

**Claim that Joe Hall Roofing Owed a Duty to Appellant**

Appellant argues that he raised an issue of fact concerning whether Joe Hall Roofing possessed contractual and actual control and, as a result, owed appellant a duty.

*Contractual Control*

With respect to contractual control, appellant argues that Joe Hall Roofing had the contractual right to control because it had some control over the manner in which appellant performed his work at the time appellant sustained his injuries and the control related to the injury the negligence caused. Appellant contends that various provisions in the Subcontractor/Supplier Agreement between Joe Hall Roofing and Simmons establish this contractual right to control, including that:

- Joe Hall Roofing agreed "to provide all materials, labor, tools, equipment, supervision, supplies and other items necessary or required to perform the work" at the Orr residence.

- "Subcontractor shall furnish all supervision, labor, tools, equipment, materials, machinery, facilities, services, employee training and testing, scaffolding, . . . and all other items" for the work at the Orr residence.

- Joe Hall Roofing was "solely responsible for all construction under this Agreement, including techniques, sequences, procedures, means and for the coordination of all Work" and "shall supervise and direct [its] Work to the best of [its] ability, and give it all attention necessary for such proper supervision and direction."

- Joe Hall Roofing agreed "not to employ or subcontract for Work on the project any person unfit or without sufficient skill to perform the job he is contracted to do."

- Joe Hall Roofing was responsible for the "safety of [its] employees, subcontractors and agents[.]"

- Joe Hall Roofing agreed "to take all necessary measures to achieve project and site safety, including complying with all provisions of the Occupational Safety and Health Act ('OSHA') and all related rules and regulations."

- Joe Hall Roofing would comply, and ensure compliance by its employees, subcontractors, and agents, with all applicable laws, including "those relating to" "occupational safety[.]"

- Joe Hall Roofing would "provide a qualified onsite supervisor whenever the Work is being performed."

- Joe Hall Roofing and its subcontractors would maintain general liability insurance providing certain insurance coverage.

- Neither party had the right to assign the contract without written consent of the other party.

- Joe Hall Roofing agreed that all its obligations and responsibilities pursuant to the agreement would survive the completion of the work.

Appellant also cites affidavit testimony of Brett Hall, president of Joe Hall Roofing, that Joe Hall Roofing "did provide scaffolding for the work performed under the contract" between Simmons and Joe Hall Roofing and affidavit testimony of Jonathan Hebb, senior project manager for Simmons, that, "[p]ursuant to the Contract between Simmons and Joe Hall" Roofing, Joe Hall Roofing "retained complete control and responsibility for the construction of the roof at the Property." Appellant argues that Joe Hall Roofing did not delegate these responsibilities through any contract, including the client service agreement between Joe Hall Roofing and MCH. Conversely, Joe Hall Roofing argues that, under controlling case law, appellant did not raise a fact issue that Joe Hall Roofing owed him a duty based on the provisions of a contract between Simmons and Joe Hall Roofing.

We agree with Joe Hall Roofing that it established as a matter of law that it did not have a contractual right to control appellant. Similar to his contentions against Simmons, appellant's arguments that he raised a fact issue regarding contractual control by Joe Hall Roofing fail.

First, the provisions appellant relies on are in a contract between Simmons, the general contractor, and Joe Hall Roofing, the roofing subcontractor. Roque, the sub-subcontractor who hired appellant, is multiple tiers of subcontractors removed from Joe Hall Roofing and is not a party to the Simmons-Joe Hall Roofing contract. *See Chevez*, 2014 WL 7246798, at \*4–5; *Gonzalez*, 418 S.W.3d at 786; *Davis*, 891 S.W.2d at 782. In addition, the contract provisions that

–12–

appellant relies on concern general supervisory responsibility or general responsibility for the safety of the project, and do not grant Joe Hall Roofing the right to control the means, methods, or details of the independent contractors' work. *Dow*, 89 S.W.3d at 607; *see Chevez*, 2014 WL 7246798, at \*3–5; *Gonzalez*, 418 S.W.3d at 785 ("General supervisory control that does not relate to the activity causing the injury is not sufficient to create a duty."); *Davis*, 891 S.W.2d at 782–83.

Appellant argues, however, that, like the court in *Abarca v. Scott Morgan Residential, Inc.*, 305 S.W.3d 110, 127, 127 n.7 (Tex. App.—Houston [1st Dist.] 2009, pet. denied), "this Court of Appeals should find that" Joe Hall Roofing's "'contractual responsibility'" to provide scaffolding and its "actually providing some, but not adequate, scaffolding" created "'a right to control[.]'" We disagree. In *Abarca*, workers injured when a scaffold collapsed sued a general contractor, Scott Morgan Residential, Inc. (SMR), and a subcontractor, Mauricio Castano, for negligence and breach of contract. 305 S.W.3d at 114. SMR hired Castano to perform construction work, Castano hired Alfredo Abarca as an independent contractor to help with cornice and framing work, and Alfredo Abarca hired appellants Bray Abarca and Juan Carlos Sanchez. *Id.* at 114–16. The court noted that Castano's subcontractor agreement with SMR stated that "Subcontractor [Castano] shall provide all . . . scaffolding'" on the project and Castano's subcontract agreement with Alfredo Abarca provided that Alfredo Abarca was "'solely responsible for all supervision and coordination of the work'" and for all "'precautions needed to carry out such work in'" a safe manner. *Id.* at 114, 127. The *Abarca* court noted, "Because Bray Abarca and Sanchez were employees of Alfredo Abarca, who was himself an independent contractor hired by Castano, the principles that govern a general contractor's duty to a subcontractor's employees determine whether Castano, in his role as a general contractor, owed a duty to Bray Abarca and Sanchez." *Id.* at 126 (citing *Dow*, 89 S.W.3d at 605–06). The

court concluded that "nothing in Castano's written agreements with Alfredo Abarca imposed a responsibility for providing the scaffolding on Alfredo Abarca" and that, because Castano retained contractual responsibility to provide scaffolding required for the work, "Castano retained a contractual right of control over the scaffolding that ultimately caused" appellants' injuries. *Id.* In this case, appellant argues that Joe Hall Roofing's "providing the scaffolding for the roofers to use on the Orrs' house is similar to 'Castano's obligations . . . to provide scaffolding' discussed by the First Court of Appeals in *Abarca*[.]" But this case is distinguishable from *Abarca*. Here, the contract between Simmons, the general contractor, and Joe Hall Roofing, the roofing subcontractor, is multiple tiers removed from Roque, the sub-subcontractor who hired appellant. In contrast, the *Abarca* court focused on the provisions in the contracts between Castano and his subcontractor Alfredo Abarca, who hired the injured appellants, and Castano and the general contractor SMR and concluded that these contracts "impose[d] a duty on Castano because Castano retained the right to control the methods and operative details of Alfred Abarca's and his employee's work as it related to the scaffolding." *Id.*; *see Gonzalez*, 418 S.W.3d at 786 (concluding "reliance upon contractual provisions in contracts to which [appellant] is not a party or a third-party beneficiary is misplaced"). In addition, the contract between Simmons and Joe Hall Roofing "does not explicitly assign control over the manner of work" concerning scaffolding to Joe Hall Roofing. *Gonzalez*, 418 S.W.3d at 785; *see Dow*, 89 S.W.3d at 606. The contract defines Joe Hall Roofing as "Contractor" and refers to Contractor throughout the agreement. Section four of the contract—the language that appellant relies on—provides that "Subcontractor shall furnish all . . . scaffolding . . . and all other items for the scope of work[.]" The contract does not define "Subcontractor."[7] As a result,

---

[7] The Simmons-Joe Hall Roofing contract refers to "Contractor and its subcontractors" and states that the "words 'Builder,' 'Contractor' and 'subcontractor' include singular or plural, individual, partnership or corporation, and the respective heirs, executors, administrators, successors, and assigns of Builder, Contractor and subcontractors, as the case may be."

under the terms of the contract, Joe Hall Roofing, as the "Contractor[,]" did not contractually retain control over the provision of scaffolding. *See Dow*, 89 S.W.3d at 606 (requiring "evidence of a contractual agreement that explicitly assigns the premises owner a right of control"). We conclude that appellant did not raise a fact issue as to whether Joe Hall Roofing had a contractual right of control.

*Actual Control*

Appellant argues that he raised an issue of fact regarding whether Joe Hall Roofing exercised actual control based on Brett Hall's affidavit testimony that Joe Hall Roofing "did provide scaffolding for the work performed under the contract" between Simmons and Joe Hall Roofing and Hall's deposition testimony that Joe Hall Roofing "furnished the materials and some equipment at least to get the job done[,]" provided "all the materials . . . that are needed to deliver the job[,]" and "everything is here to put the roof on." According to appellant, Hall "knew that Appellant and his co-workers installing that roof could not []reach the top of the dormer on that roof to nail pieces of slate onto it by standing on the main part of that roof or by standing on a regular, metal 'masonry scaffold[.]'" Appellant also cites to (1) evidence that Joe Hall Roofing specified the type of nails to use in the roofing job and required they be nailed in by hand, (2) testimony by Jonathan Hebb, senior project manager for Simmons, that Joe Hall Roofing's job supervisor, Michael August, directed and supervised the workers on the roof and Hebb saw August "talking to workers on top of the roof[,]"[8] (3) testimony by Kay Orr, MCH's registered agent, that August would tell Alfredo Deras "[n]ot to do it that way" and not to "do the wrong thing that we agreed to" or "didn't agree to[,]" (4) Hebb's testimony that he "place[d] all responsibility on how to [put on the slate] on Joe Hall Roofing[,]" Joe Hall Roofing had

---

[8] Hebb testified that "for what [he knew], Michael [August] was directing and supervising those guys[.]" But he also testified that he "did not see Michael on top of the roof . . . he was always on the ground." In addition, appellant refers to Orr's deposition testimony that Michael August "is a supervisor" who "was the supervisor of the overall job" of the roof installation at the Orrs' house.

–15–

"control[,]"[9] and he held "them responsible for the delivery of the job." Appellant argues that, as a result, Joe Hall Roofing "should have known that appellant and his co-workers needed a special scaffold to be able to reach the top of that dormer and nail pieces of slate onto it and failed to provide it to them or help them construct a reasonably safe one to use." Appellant contends that the evidence demonstrated that Joe Hall Roofing controlled some of the means, manner, and details of the roofing work on the project and, as a result, raised a fact issue about whether it owed a duty to appellant.

Appellant again relies on *Abarca*. But *Abarca*'s conclusion that the summary judgment record raised an issue of fact as to Castano's exercise of actual control is distinguishable. *See* 305 S.W.3d at 127–28, 127 n.7. There, the court concluded that there was a fact issue concerning whether Castano had actual control based on evidence including that Castano was "present and 'supervising the job'" while a subcontractor and one of his employees (one of the plaintiffs) "built the scaffold" and Castano gave the subcontractor "suggestions and an 'orientation' regarding how to build the scaffold that caused [the plaintiffs'] injuries." *Id.* at 124–25, 128 n.8. Here, the evidence established that only Roque—and no representatives of Joe Hall Roofing or any appellee—gave instructions to Aldana concerning how to build the supportive structure and watched while appellant and Aldana built it.

Appellant also argues that, even if Joe Hall Roofing did not supervise or observe appellant's work, Joe Hall Roofing had a duty to provide a reasonably safe workplace and suitable warnings to the contractor and its employees, including appellant. *See Samco Props., Inc. v. Cheatham*, 977 S.W.2d 469, 475–76 (Tex. App.—Houston [14th Dist.] 1998, pet. denied); *Barham v. Turner Const. Co. of Texas*, 803 S.W.2d 731, 735–36 (Tex. App.—Dallas 1990, writ denied). Appellant also argues that an invitor owes his invitee the duty to furnish a reasonably

---

[9] Hebb testified, "They have control. I don't have control over an independent contractor."

–16–

safe premises and to protect an invitee from a dangerous condition of which the invitor is or should be aware. *See State Dep't of Highways & Pub. Transp. v. Payne*, 838 S.W.2d 235, 237 (Tex. 1992); *Olivier v. Snowden*, 426 S.W.2d 545, 547–49 (Tex. 1968); *see also Summers v. Fort Crockett Hotel, Ltd.*, 902 S.W.2d 20, 28 (Tex. App.—Houston [1st Dist.] 1995, writ denied). Appellant refers to testimony by Hebb, Simmons's project manager, that (1) he did "[n]ot . . . recall" seeing a guardrail on the lower edge of the roof or if the roofing workers were attached to a fixture on the roof with a cord or a line and (2) "work[ing] up on a roof as the one at the . . . Orr's house without a guardrail or safeline" "is [a] potential[ly] dangerous situation[.]" Appellant also notes Hall's testimony referring to the Orrs' roof as steep.

But a general contractor "is liable to employees of an independent contractor only for claims arising from a pre-existing defect rather than from the contractor's work, and then only if the pre-existing defect was concealed[.]" *Gen. Elec. Co. v. Moritz*, 257 S.W.3d 211, 215 (Tex. 2008) (concerning a landowner's liability to employees of an independent contractor) (citing *Koch*, 11 S.W.3d at 155 n.1); *see Hernandez v. Hammond Homes, Ltd.*, 345 S.W.3d 150, 156 (Tex. App.—Dallas 2011, pet. denied). As the supreme court stated, "Unlike other invitees, independent contractors are hired for special projects that often entail special expertise, and can be expected to use whatever equipment or precautions are necessary so long as a hazard is not concealed." *Moritz*, 257 S.W.3d at 217 (internal footnote omitted). In addition,

> [a]n independent contractor owes its own employees a nondelegable duty to provide them a safe place to work, safe equipment to work with, and warn them of potential hazards; it also controls the details and methods of its own work, including the labor and equipment employed. Thus, one who hires an independent contractor generally expects the contractor to take into account any open and obvious premises defects in deciding how the work should be done, what equipment to use in doing it, and whether its workers need any warnings. Placing the duty on an independent contractor to warn its own employees or make safe open and obvious defects ensures that the party with the duty is the one with the ability to carry it out.

–17–

*Id.* at 215–16 (internal footnotes omitted). And here, there is no claim that the steepness of the roof without guardrails was a concealed hazard. *See id.* at 215.[10]

We conclude that the summary judgment evidence established that Joe Hall Roofing did not exercise contractual or actual control, did not owe appellant a duty, and appellant did not raise a fact issue concerning whether Joe Hall Roofing exercised contractual or actual control. Consequently, the trial court did not err in granting summary judgment on appellant's negligence claims against Joe Hall Roofing.

**Claim that MCH Owed a Duty to Appellant**

Appellant argues that he raised an issue of fact concerning whether MCH possessed contractual and actual control and, as a result, owed appellant a duty.

*Contractual Control*

Appellant refers to one provision of MCH's contract with Deras that states, "IF SUBCONTRACTOR FAILS TO COMPLY WITH THE POLICIES IN EFFECT, MCH . . . HAS THE AUTHORITY TO REMOVE THE SUBCONTRACTOR FROM THE PROJECT AND CHARGE THE SUBCONTRACTOR BACK FOR COSTS TO FINISH THE JOB."[11] But appellant does not present any argument as to how this provision of the contract establishes MCH's contractual control. As a result, we conclude that appellant has not presented an issue for our review. *See* TEX. R. APP. P. 38.1(i).

---

[10] In the section of appellant's brief concerning proximate cause, appellant also cites authority for the proposition that if a party negligently creates a dangerous situation, he has a duty "to do something about it" to prevent injury. *Buchanan v. Rose*, 159 S.W.2d 109, 110–11 (Tex. 1942) (concluding defendant's agent did not create dangerous situation); *see Reinicke v. Aeroground, Inc.*, 167 S.W.3d 385, 387 (Tex. App.—Houston [14th Dist] 2005, pet. denied) (concerning person who created dangerous condition on public highway). But, as one of these authorities—*Abalos v. Oil Development Co. of Texas*, 544 S.W.2d 627, 633 (Tex. 1976)—states, "the defendant did not create the dangerous condition or activity" when the "entire operation" "was at the time under the direction and control of an independent contractor[.]" Appellant also discusses authority that concludes that an owner or employer who is aware that a contractor or subcontractor disregarded safety precautions or policies may owe a duty to supervise or correct. But those cases state that the duty applies when the general contractor exercises control over the subcontractor's work, *see Lee Lewis Constr., Inc. v. Harrison*, 70 S.W.3d 778, 784 (Tex. 2001); *Tovar v. Amarillo Oil Co.*, 692 S.W.2d 469, 470 (Tex. 1985), and that "the employer's duty of care is commensurate with the control it retains over the contractor's work." *Hoechst-Celanese*, 967 S.W.2d at 357.

[11] Appellant also notes the provision in MCH's contract with Joe Hall Roofing in which MCH agreed to provide "a pool of subcontractors to JHR" but argues that, "[i]n neither that contract nor any other produced by any of Appellees did JHR delegate any of its obligations and responsibilities described above to MCH[.]" Appellant does not include argument or authorities concerning MCH's contractual control based on that contractual provision.

–18–

***Actual Control***

Appellant also argues that MCH exercised actual control. To establish that he raised an issue of fact as to whether MCH had actual control, appellant refers to the testimony of Kay Orr, MCH's registered agent, that (1) MCH provides independent roofing contractors for Joe Hall Roofing, (2) she was responsible for "contract management" for MCH and Joe Hall Roofing, (3) during 2011, Joe Hall Roofing used only "MCH to obtain labor for its roofing jobs[,]" (4) Deras was a "repeat client of MCH" and had been on "many" jobs over "years[,]" (5) MCH furnished Deras to Joe Hall Roofing for the work on the Orrs' house as MCH had for "a lot of" jobs, (6) Orr did not "know who was working on the job[,]" (7) MCH had knowledge of Deras's skill and experience in the construction field but did not know about his safety record, (8) whether Deras complied with OSHA was Deras's "business[, n]ot ours[,]" and (9) Joe Hall Roofing delivered two thousand residential roofing jobs in 2011. But appellant has not argued or cited any summary judgment evidence to show that he raised an issue of fact concerning whether MCH "controlled the method of work or its operative details" or that "the independent contractor and its employee were not free to do their work their own way." *Dow*, 89 S.W.3d at 608. In addition, the summary judgment record reflects that any supervisory control MCH possessed did not relate to the activity that caused the injury and, as a result, was not sufficient to raise an issue of fact concerning whether a duty existed. *See Gonzalez*, 418 S.W.3d at 785.

We conclude that the trial court did not err in granting summary judgment dismissing appellant's negligence claims against MCH because the summary judgment evidence established as a matter of law that MCH did not owe appellant a duty, and appellant did not raise an issue of fact regarding duty.

**Claim that Deras Owed a Duty to Appellant**

Appellant argues that he raised an issue of fact concerning whether Deras possessed contractual and actual control and, as a result, owed appellant a duty.

*Contractual Control*

In his discussion of contractual control, appellant lists four provisions of Deras's subcontractor agreement with MCH: (1) Deras would pay for proper insurance coverage for all employees under MCH's employee injury program, (2) Deras would "FURNISH AND REQUIRE[]" all of his employees to wear proper safety equipment, including hard hats, when on a job site as required by MCH, (3) "WORK OFF OF PLATFORMS, SCAFFOLDING AND LADDERS MUST CONFORM TO 'OSHA' STANDARDS[,]" and (4) the use of fall prevention and protection programs was required "WHEN WORKING IN AREAS MORE THAN SIX (6) FEET HIGH NOT PROTECTED BY HANDRAILS[.]" But Roque, the subcontractor who hired appellant, is not a party to that contract. In addition, Deras's general contractual rights and responsibilities to maintain insurance and work safety are not sufficient to raise an issue of fact regarding contractual control because they do not grant Deras the right to control the means, methods, or details of the independent contractor's work. *Chevez*, 2014 WL 7246798, at *3–4. Appellant does not argue or cite any evidence demonstrating that Deras had the right to control the means, methods, or details of the independent contractor's work. *See Dow*, 89 S.W.3d at 606; *Chevez*, 2014 WL 7246798, at *3–5. Appellant did not raise a fact issue concerning whether Deras owed a contractual duty to appellant. *See id.*

*Actual Control*

To support his argument that he raised a fact issue regarding actual control, appellant relies on (1) Deras's testimony by affidavit that he began working for Joe Hall Roofing about nine years before and that Michael August "give[s Deras] the jobs[,]" (2) Deras's deposition

–20–

testimony that he was "on" the "job site" at the Orr's house "every day[,]" that he reported to Michael August—who was his "superintendent on that job"—and that Deras was a foreman, and (3) Brett Hall's deposition testimony that Joe Hall Roofing provided all roofing materials and then "got Alfredo [Deras] putting it all in place as he knows how to do" and that he expected Deras to comply with OSHA. Appellant also relies upon Joe Hall Roofing supervisor Michael August's deposition testimony that (1) Deras "knows that" safety is "his responsibility" when August hires him to do a roofing job, (2) Deras did not tell August that "he was going to hire another foreman or superintendent below him to do the installation of the roofing job at the Orr's house[,]" (3) the "ways in which things are safe as opposed to" unsafe is "up to the crew leader, the subcontractor" as "that's what I pay him for[,]" (4) "the subcontractor should have thorough knowledge of OSHA" safety regulations, that he pays the subcontractor to have that knowledge, and that he did not think that he "should verify whether the subcontractor has that knowledge" of OSHA safety regulations, and (5) August expected Deras—and paid Deras to—hire competent workers to install the roof.

But "merely exercising or retaining a general right to recommend a safe manner for the independent contractor's employees to perform their work is not enough to subject" Deras to liability. *Dow*, 809 S.W.3d at 607. Likewise, appellant did not present any evidence raising an issue of fact concerning whether Deras "controlled the method of work or its operative details" or that "the independent contractor and its employee were not free to do their work their own way." *Id.* at 608. In fact, appellant testified that he did not know Deras and that he received all instruction from Roque. In addition, Deras's general supervisory control that did not relate to the activity that caused the injury did not raise an issue of fact as to whether Deras owed a duty to appellant. *See Gonzalez*, 418 S.W.3d at 785.

We conclude that the summary judgment evidence established as a matter of law that Deras did not exercise contractual or actual control and, as a result, did not owe appellant a duty and that appellant did not raise an issue of fact regarding duty. As a result, the trial court did not err in granting summary judgment on appellant's negligence claims against Deras.[12]

We resolve the portion of appellant's second issue concerning his negligence claims against him.

### JOINT ENTERPRISE

As another part of his second issue, appellant argues that the trial court erred in granting summary judgment on his joint enterprise claim because he raised a fact issue on each element of that claim. "The theory of joint enterprise is to make each party thereto the agent of the other and thereby to hold each responsible for the negligent act of the other." *Shoemaker v. Estate of Whistler*, 513 S.W.2d 10, 14 (Tex. 1974); *see In re Tex. Dep't of Transp.*, 218 S.W.3d 74, 78 (Tex. 2007) (orig. proceeding) (per curiam) ("Joint enterprise is a theory involving derivative liability whereby one enterprise participant may be held responsible for a cause of action proven against another participant."). The four elements "essential to a joint enterprise" are (1) an agreement, express or implied, among the members of a group, (2) a common purpose to be carried out by the group, (3) a community of pecuniary interest in that purpose, among the members, and (4) an equal right to a voice in the direction of the enterprise, which gives an equal right of control. *Chevez*, 2014 WL 7246798, at *7 (quoting *St. Joseph Hosp. v. Wolff*, 94 S.W.3d 513, 525 (Tex. 2003)).

Appellees argue that appellant did not raise an issue of fact on any of the elements of the claim. They also contend that, regardless of these elements, the trial court properly granted

---

[12] Because we conclude that appellees did not owe appellant a duty, it is unnecessary to address the issue of proximate cause. TEX. R. APP. P. 47.1.

summary judgment because there was no underlying liability to support appellant's joint enterprise claim. We agree. "Where parties are engaged in a joint enterprise, the negligence of one party may be imputed to the other." *Chevez*, 2014 WL 724798, at \*8. Because we have concluded that the trial court did not err in granting summary judgment on appellant's negligence claims against appellees, there is no negligence to impute to appellees under the vicarious liability claim of joint enterprise. *See Chevez*, 2014 WL 724798, at \*8 (stating that if the plaintiff "establishes that one of the defendants was negligent, and also establishes the elements of a joint enterprise among the defendants, the negligence of one defendant may be imputed to the others"); *David L. Smith & Assocs., L.L.P. v. Stealth Detection, Inc.*, 327 S.W.3d 873, 877 (Tex. App.—Dallas 2010, no pet.) ("The theory of joint enterprise imputes liability to one who, although he did no wrong, is so closely connected to the wrongdoer that it justifies the imposition of vicarious liability."). As a result, we resolve the portion of appellant's second issue concerning his joint enterprise claim against him.

**CONCLUSION**

We overrule appellant's issues and affirm the trial court's judgment.


/Elizabeth Lang-Miers/
ELIZABETH LANG-MIERS
JUSTICE


140575F.P05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

FELIPE CARDONA, Appellant

No. 05-14-00575-CV          V.

SIMMONS ESTATE HOMES I, LP D/B/A
SIMMONS ESTATE HOMES, JOE HALL
ROOFING, INC., MCH PERSONNEL
MGT, INC., AND ALFREDO DERAS,
Appellees

On Appeal from the 116th Judicial District
Court, Dallas County, Texas
Trial Court Cause No. DC-12-05101.
Opinion delivered by Justice Lang-Miers,
Justices Fillmore and Schenck participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellees SIMMONS ESTATE HOMES I, LP D/B/A SIMMONS ESTATE HOMES, JOE HALL ROOFING, INC., MCH PERSONNEL MGT, INC., AND ALFREDO DERAS recover their costs of this appeal from appellant FELIPE CARDONA.

Judgment entered this 25th day of May, 2016.

–24–